IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ERRNIE FLOWERS**                                                                                    **PLAINTIFF**

v.                                                    Case No. 4:19-cv-00385-LPR

**AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY**                                                           **DEFENDANT**

## ORDER

Before the Court is ANPAC's Motion for Summary Judgment on the Issues of Bad Faith and Wrongful Action in the Performance of the Policy.[1] For the reasons explained below, ANPAC's Motion is GRANTED.

### I. BACKGROUND

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[2] Conversely, if the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[3] It is important to understand that "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment."[4] To prevent summary judgment, the dispute of fact must be both genuine and material.[5] A genuine dispute of fact exists where a rational jury could decide the particular question of fact for either

---

[1] Def.'s Mot. for Partial Summ. J. (Doc. 9).

[2] *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing FED. R. CIV. P. 56).

[3] *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[4] *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

[5] *Id.*

party.[6]  A material dispute of fact exists where the jury's decision on the particular question of fact determines the outcome of a potentially dispositive issue under the substantive law.[7]

The moving party has the burden of showing that (1) there is an absence of a genuine dispute of material fact on at least one essential element of the nonmoving party's case and (2) the absence means that a rational juror could not possibly find for the nonmoving party on that essential element of the nonmoving party's case.[8]  If the moving party meets that burden, the burden then shifts to the nonmoving party to show that there is a genuine dispute of material fact.[9]  The nonmoving party meets this burden by designating specific facts in affidavits, depositions, answers to interrogatories, admissions, or other record evidence that shows "there is a genuine issue for trial."[10]  The Court must view the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences.[11]  Accordingly, for purposes of the Motion here, the Court considers the most pro-plaintiff version of the record that a reasonable jury could rationally conclude occurred.

The Court previously laid out the relevant and undisputed material facts in Section 1.a. of its April 6, 2020 Order.[12]  The Court incorporates those facts here.

---

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] *Id.*

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[9] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); Torgerson, 643 F.3d at 1042.

[10] *Celotex Corp.*, 477 U.S. at 322-24.

[11] *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

[12] (Doc. 51).

## II. LEGAL ANALYSIS

### A. Bad Faith

With regard to bad faith, the Arkansas Supreme Court has explained, and the Eighth Circuit has recognized, that under Arkansas law:

> [I]n order to be successful a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy. Such a claim cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer. Neither can this type [of] claim be based upon negligence or bad judgment so long as the insurer is acting in good faith.[13]

This standard "is rigorous and difficult to satisfy."[14] The "dishonest, malicious, or oppressive" acts must be "carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge."[15] Therefore, even when the insurance company is guilty of "negligence, gross ignorance, or a complete failure to investigate a claim," the tort of bad faith is unavailable.[16] The Arkansas Supreme Court has made clear that the "[m]ere refusal to pay insurance cannot constitute wanton or malicious conduct when . . . an actual controversy exists with respect to liability on the policy."[17] The court emphasized that "if this were not the rule, then a claimant could recover punitive or exemplary damages in every action that involved a refusal to pay an insurance policy."[18]

The case at bar is dissimilar to the examples of bad faith claims provided by the Arkansas Supreme Court. Those examples include lying about coverage, conversion of an insured's

---

[13] *Sims v. State Farm Mut. Auto. Ins. Co.*, 894 F.3d 941, 945 (8th Cir. 2018) (quoting *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 133, 664 S.W.2d 463, 465 (1984)).

[14] *Id.* (quoting *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, 627, 210 S.W.3d 84, 87 (2005)).

[15] *Id.*

[16] *Id.* (quoting *S. Farm Bureau Cas. Ins. Co. v. Allen*, 326 Ark. 1023, 1026, 934 S.W.2d 527, 529 (1996)).

[17] *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 492, 237 S.W.3d 32, 41 (2006).

[18] *Id.*

damaged vehicle, and falsification of records.[19] As further explained below, nothing in this case rises anywhere close to that level of misconduct.

The Complaint is not very clear about what exactly Ms. Flowers is alleging as bad faith. The "First Party Bad Faith" Count in the Complaint recites a litany of supposed grounds for a bad faith claim against an insurance carrier without connecting them to specific factual allegations. It states that:

- "An insurance carrier may act in bad faith when after a due investigation it determines a claim is valid, yet refuses to pay."[20]

- "Reckless indifference to proof submitted by an insured will support a jury's finding of bad faith."[21]

- "A carrier who shifts the entire burden of investigating a claim to an insured, and violates its own internal guidelines by not investigating, acts in bad faith."[22]

- "A carrier violating its own internal procedures will a support a finding that the carrier knew or recklessly disregarded the lack of a reasonable basis for denying or underpaying a claim."[23]

- "A carrier may act in bad faith if it does not conduct a proper investigation to determine the full extent of an insured's injuries."[24]

- "A carrier's failure to pay a claim after receiving adequate documentation from the insured presents a question of fact for a jury to determine whether the carrier acted in bad faith."[25]

- "A carrier pattern or practice of withholding or underpaying policy benefits may be evidence of bad faith."[26]

---

[19] *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 58, 991 S.W.2d 555, 561 (1999).

[20] Pl.'s Compl. (Doc. 2) at 35.

[21] *Id.*

[22] *Id.* at 36.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

4

- "A carrier may properly give consideration to its own interests in determining whether to accept or reject a settlement offer, but it must at a minimum give at least equal consideration to the insured's interests, and if it fails to do so it acts in bad faith."[27]

- "A carrier's 'willful ignorance of the facts coupled with a grim determination to deny coverage' on grounds created by the carrier, and 'turning a blind eye to clear evidence' in support of a claim is substantial evidence of bad faith."[28]

- "A carrier's actions may be so unreasonable as to be dishonest, which is a question of fact for a jury to decide, including the violation of a statute that is inconsistent with a defense asserted by the carrier."[29]

The Count concludes by alleging that ANPAC is liable for "violation of one or more of the above described duties owed to her."[30]

Ms. Flowers' Response to the Motion for Summary Judgment refines some of these allegations at the same time as it adds new supposed "bad faith" conduct. Ms. Flowers specifically argues that ANPAC:

(1) "violated good faith duty to investigate claim at its expense;"[31]

(2) "violated its claims manual by not using its required Bodily Injury Evaluation Worksheet form to separately value each element of Ms. Flowers damage;"[32]

(3) "violated its duty to give equal consideration to Ms. Flowers through adversarial claim practices;"[33]

(4) "violated its good faith duty owed to Ms. Flowers to follow Arkansas law on mental anguish in interpreting its policy;"[34]

---

[27] *Id.*

[28] *Id.* at 37.

[29] *Id.*

[30] *Id.*

[31] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 8.

[32] *Id.* at 10.

[33] *Id.* at 13.

[34] *Id.* at 19.

(5) "violated its good faith claim handling duty to re-evaluate the claim as new information became available;"[35]

(6) failed to "communicate claims decisions;"[36] and

(7) engages in a "general business practice, pattern and practice of dishonest lowballing of claims."[37]

The Court will address each of these seven asserted acts or omissions in turn.

*1.    Assertion that ANPAC "violated good faith duty to investigate claim at its expense"[38]*

Ms. Flowers asserts that, "[a]t a minimum, if ANPAC questioned the medical information provided by Ms. Flowers' attorneys, it should have requested an independent medical examination from a properly qualified and objective physician."[39] The Arkansas Supreme Court has held that even a "complete failure to investigate a claim," without more, fails to state a claim for bad faith.[40] Likewise, the Eighth Circuit has held that, under Arkansas law, even when an insurance company "should have done a more thorough investigation," this would show "only negligence and fall short of dishonest, malicious, or oppressive conduct as a matter of law."[41] Other than pointing to the supposedly inadequate investigation, Ms. Flowers has provided no evidence that ANPAC "affirmatively engage[d] in dishonest, malicious, or oppressive conduct" that was "carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge."[42]

---

[35] *Id.* at 22.

[36] *Id.* at 23.

[37] *Id.* at 24.

[38] *Id.* at 8.

[39] Pl.'s Statement of Additional Facts (Doc. 39) at 11. *See also* Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 9 ("Universal practice among insurance carriers is to pay for IMEs or peer reviews, which is a part of the premium dollar, in the investigation of disputed claims. At a minimum, if ANPAC disputed the medical evidence submitted by Ms. Flowers, it should have utilized these investigative tools from a properly qualified and objective physician.").

[40] *Unum*, 362 Ark. at 628, 210 S.W.3d at 88.

[41] *Sims*, 894 F.3d at 945.

[42] *Swaim*, 338 Ark. at 56, 991 S.W.2d at 559 (citations omitted).

> 2. *Assertion that ANPAC "violated its claims manual by not using its required Bodily Injury Evaluation Worksheet form to separately value each element of Ms. Flowers damage"*[43]

Ms. Flowers asserts that ANPAC "violated its own Claims Manual and claim employee training materials requiring the use of either a Bodily Injury Evaluation Worksheet or the Evaluation Tab Worksheet within the Fusion computer program."[44] She argues (in a conclusory manner) that this violation of internal policy was done "intentionally."[45] Ms. Flowers concedes that "the BI Evaluation Worksheet form was used, which is a manual form later scanned into the computer system."[46] But she says that this form was "wholly incomplete"[47] because certain fields "were left blank and not completed."[48] In a somewhat similar case arising under Arkansas law, the Eighth Circuit held that even if an insurance company "ran afoul of [its] own claims manual," "violated [its] procedures," and "should have done a more thorough investigation," such "allegations show only negligence and fall short of dishonest, malicious, or oppressive conduct as a matter of law."[49] So it is here as well.

> 3. *Assertion that ANPAC "violated its duty to give equal consideration to Ms. Flowers through adversarial claim practices"*[50]

In arguing that ANPAC failed "to give equal consideration to Ms. Flowers through adversarial claim practices," Ms. Flowers objects to various actions taken by ANPAC in evaluating her claim. She takes issue with certain "negotiation points" ANPAC considered; for example, Ms.

---

[43] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 10.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 11.

[47] *Id.* at 12.

[48] *Id.* at 10.

[49] *Sims*, 894 F.3d at 945-46.

[50] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 13.

Flowers argues that her preexisting conditions should have been considered a "positive" factor rather than a "negative" factor because preexisting conditions can be aggravated an insured event. Ms. Flowers also points to claim adjusters' notes as evidence of adversarial treatment; for example, she says the notes indicate that ANPAC conducted a check for any social media presence or previous insurance claims, and argues that this is proof that they were looking for "dirt to throw on Ms. Flowers."[51] Ms. Flowers also asserts that ANPAC's evaluation software is "rigged to cheat Ms. Flowers and everyone else."[52]  Ms. Flowers also asserts that "ANPAC engaged in 'lowballing'" as a negotiation tactic.[53]

While insurance companies are obligated to indemnify good claims, they are also entitled to protect themselves against potentially fraudulent or inflated claims.  The processes Ms. Flowers complains of are rather routine insurance procedures designed to distinguish good claims from bad.  The claims process may be stressful and intrusive, and it may at times create tension between the reasonable positions of the insurer and the reasonable positions of the insured.  But as this Court has previously observed, "the tort of bad faith does not impose the Rules of the Marquess de Queensbury."[54]  An insurer does not commit the tort of bad faith by a good faith attempt to protect what it sees as its lawful interests.  This is true even if the insurer's good faith position later turns out to be wrong.

As for the "lowballing" and "rigging" arguments, while a plaintiff's attorney might feel that an insurance company is "lowballing" during settlement negotiations, the insurance company might also feel that the plaintiff's attorney is engaged in "highballing."  Placing a dollar amount

---

[51] *Id.* at 16.

[52] *Id.*

[53] *Id.* at 17

[54] *Parker-Gilbert v. Shelter Mut. Ins. Co.*, No. 4:19-CV-00185-LPR, 2020 WL 2647404, at *10 (E.D. Ark. May 11, 2020).

on an injury can be in many situations a pretty subjective task, and disagreements about the amount necessary to make an insured whole can arise even when both parties are acting in good faith. If "[t]he tort of bad faith does not arise from a mere denial of a claim,"[55] it certainly does not arise from a mere settlement offer.[56] The disappointing (from Ms. Flowers' perspective) settlement offer, by itself, does not evince bad faith. And there is simply no evidence to back up the "rigged to cheat" argument.

        4.    *Assertion that ANPAC "violated its good faith duty owed to Ms. Flowers to follow Arkansas law on mental anguish in interpreting its policy"*[57]

Ms. Flowers claims that "ANPAC intentionally violated Arkansas law by interpreting Ms. Flowers' UIM auto policy to not include the 'mental anguish' element of damages."[58] ANPAC asserts in its Response that its "position is not that mental anguish is not recoverable," but rather that it must "be related to the bodily injury caused by the accident."[59] Ms. Flowers argues that ANPAC acted in bad faith because it "admits it did not evaluate nor assign a value for this element of mental anguish damages."[60] ANPAC counters that "no evidence was provided by Plaintiff to ANPAC that she sustained any mental anguish or suffers from post-traumatic stress disorder," and that "[n]o evidence of mental anguish in fact exists in this claim."[61]

---

[55] *Unum*, 362 Ark. at 628, 210 S.W.3d at 88.

[56] *Aetna*, 281 Ark. at 133, 664 S.W.2d at 465 (holding that bad faith "cannot be based upon good faith denial, *offers to compromise a claim* or for other honest errors of judgment by the insurer") (emphasis added).

[57] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 19.

[58] *Id.*

[59] Def.'s Reply to Mot. for Summary J. (Doc. 43) at 5. The law regarding mental anguish and bodily injury is not in dispute, as Ms. Flowers also recognizes that "recovery for mental anguish as a result of 'bodily injury' in negligence actions has long been a recoverable element of damages in this state." Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 20. The position taken by the parties is correct, as the Arkansas Supreme Court has "long held that 'there can be no recovery for fright or mental pain and anguish caused by negligence, where there is no physical injury.'" *Dowty v. Riggs*, 2010 Ark. 465, 6, 385 S.W.3d 117, 121 (2010).

[60] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 19-20.

[61] Def.'s Reply to Mot. for Summary J. (Doc. 43) at 6.

Ms. Flowers asserts that her "mental anguish/PTSD was increased by the fact that Ms. Flowers' rear impact collision was caused by a drunk driver who fled the scene of the collision,"[62] but she does not assert that she provided medical records or other proof of mental suffering to ANPAC. She only points to ANPAC's failure to assign a value for mental anguish in her case as proof that ANPAC is acting in bad faith.[63] But without evidence that Ms. Flowers has in fact suffered mental anguish, ANPAC could not assign a value for this element. The facts provided by Ms. Flowers in this record fail to show that ANPAC "affirmatively engage[d] in dishonest, malicious, or oppressive conduct" that was "carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge"[64] by failing to account for mental anguish damages.

     *5.    Assertion that ANPAC "violated its good faith claim handling duty to re-evaluate the claim as new information became available"[65]*

Ms. Flowers states that "[t]here is no evidence ANPAC considered new information" it received.[66] As support, Ms. Flowers states that "Deponent Buff, ANPAC's corporate mouthpiece, testified he had not reviewed Ms. Flowers discovery deposition,"[67] though she also concedes that Mr. Buff "qualified his testimony by not being currently active in the litigation department."[68]

There is an ongoing dispute in this case about when ANPAC received updated information about Ms. Flowers' chiropractic treatment and other medical records.[69] But even assuming that

---

[62] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 19.

[63] *Id.* at 19-20 ("ANPAC admits it did not evaluate nor assign a value for this element of mental anguish damages available to all tort victims in Arkansas."); Pl.'s Statement of Facts (Doc. 39) at 10.

[64] *Swaim*, 338 Ark. at 56, 991 S.W.2d at 559 (citations omitted).

[65] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 22.

[66] *Id.*

[67] *Id.* at 23.

[68] *Id.* at 22.

[69] *See* Order (Doc. 51); Pl.'s Resp. to Mot. for Costs (Doc. 58); Def.'s Reply to Mot. for Costs (Doc. 74).

ANPAC "should have conducted a more thorough investigation of her damages and should have given greater credence to the expert evidence she [ultimately] submitted," or evidence it otherwise received, this would "show only negligence and fall short of dishonest, malicious, or oppressive conduct as a matter of law."[70]  Moreover, "a valid controversy exists with respect to liability on the policy."[71]  When ANPAC offered $5,000 instead of meeting Ms. Flowers' demand for the $50,000 policy limits, Ms. Flowers had already received $25,000 from the negligent driver, and Ms. Flowers' counsel had only provided ANPAC with approximately one year's worth of records showing intermittent treatment by a chiropractor and bills totaling $8,923.88.  Even after the medical bills were supplemented, Ms. Flowers' medical bills totaled only $15,673.33, which is barely half of the $30,000 in total compensation Ms. Flowers would have received if she had accepted ANPAC's $5,000 offer. An insurance carrier could conclude in good faith that $30,000 would adequately compensate Ms. Flowers for the accident damages.  ANPAC may be wrong, but it is not bad faith to be wrong.

      *6.*  *Assertion that ANPAC failed to "communicate claims decisions"*[72]

Ms. Flowers claims that ANPAC's letter explaining that the $5,000 offer was "based on your client's injury, medical treatment, facts of the loss, and the information you provided to our office" was not "anywhere close to an adequate explanation."[73] This asserted failure to communicate, by itself, is insufficient to establish a bad faith claim.  The Arkansas Supreme Court has held that when a "plaintiff alleged that an insurance company failed to explain its reasons for

---

[70] *Sims*, 894 F.3d at 945.

[71] *Cato v. Arkansas Mun. League Mun. Health Ben. Fund*, 285 Ark. 419, 422, 688 S.W.2d 720, 723 (1985).

[72] *Id.* at 23.

[73] Pl.'s Statement of Additional Facts (Doc. 39) at 12.

11

refusal to honor claims," this alone does not give rise to a bad faith claim.[74] Other than pointing to the supposedly inadequate communication, Ms. Flowers has provided no evidence that ANPAC "affirmatively engage[d] in dishonest, malicious, or oppressive conduct" that was "carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge."[75] There is no evidence, for example, that ANPAC broke off all communications in a spirit of animosity. Ms. Flowers was simply unsatisfied with the level of detail contained in letter explaining the factors that went in to the settlement offer.

       7.    *Assertion that ANPAC engages in a "general business practice, pattern and practice of dishonest lowballing of claims"*[76]

In discussing bad faith, the Complaint miscited the 2011 case <u>Allstate</u> Ins. Co. v. Dodson[77] as "<u>ANPAC</u> Insurance Company v. Dodson".[78] The Complaint attributed to ANPAC the behaviors Allstate was accused of (but not directly held liable for) in the cited case.[79] For example, Ms. Flowers cited the *Allstate* case in claiming that "ANPAC's unlawful and recidivist practice has been ongoing for a number of years."[80] ANPAC's Answer stated that "Plaintiff's counsel was

---

[74] *Id. See also Findley v. Time Insurance Company*, 264 Ark. 647, 573 S.W.2d 908 (1978) ("The complaint merely alleges that the defendant has failed to explain, failed to investigate, and failed to contact the plaintiff or her physician. Such inaction does not give rise to a cause of action in tort.") (cleaned up).

[75] *Swaim*, 338 Ark. at 56, 991 S.W.2d at 559 (citations omitted).

[76] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 24.

[77] 2011 Ark. 19, 376 S.W.3d 414 (2011).

[78] *See* Pl.'s Compl. (Doc. 2) ¶ 44.D. n.31 ("*ANPAC* [sic] *Insurance Company v. Dodson*, 2011 Ark. 19, p. 18-20, (2011) (affirmed a jury verdict for $6 million compensatory damages and $15 million punitive damages based on ANPAC declaring 'economic warfare' on injury victims, their lawyers and their medical providers)"). *See also id.* ¶ 44.WW n.80 ("*ANPAC* [sic] *Insurance Company v. Dodson*, 2011 Ark. 19, p. 24-33, 376 S.W.3d 414 (2011) (compensatory damage award of $6 million and punitive damage award of $15 million affirmed where ANPAC, in accordance with national claims practices and procedures to curb small, soft-tissue claims, engaged in defamation of plaintiff physician to severely limit his medical practice and shut down his business)").

[79] *See* Pl.'s Compl. (Doc. 2) ¶ 167 ("On information and belief ANPAC's actions demonstrate a willingness to deny or underpay claims, and depicts ANPAC's institutional business practices and procedures as 'a program of economic warfare' designed to curtail soft-tissue claims for the purpose of enhancing corporate profits."), *citing Dodson*, 376 S.W.3d at 431.

[80] Pl.'s Compl. (Doc. 2) ¶ 165.

previously placed on notice of this misstatement but nevertheless has chosen to file this defamatory statement of record."[81]

In later filings and hearings, Ms. Flowers began correctly referring to Allstate rather than ANPAC as the defendant in the *Dodson* case. Ms. Flowers argues that "[w]hat ANPAC has done in this case is not unlike the Arkansas Supreme Court condemning Allstate for declaring 'economic warfare' on collision injury victims."[82] She says that ANPAC engages in a "general business practice, pattern and practice of dishonest lowballing of claims."[83]

The *Allstate v. Dodson* case is off-point.[84] But even if it did involve a bad faith claim, Allstate's actions cannot be attributed to ANPAC. The conclusory comparisons between Allstate and ANPAC are not sufficient to support a bad faith claim. The conclusory comparisons between this case and other cases Ms. Flowers cites also fail to establish bad faith. The only fact directly related to ANPAC's general practices is Mr. Buff's statement that "ANPAC generally handled Ms. Flowers UIM claim the same way it handles all other similar UIM claims."[85] That statement cannot be extrapolated as evidence of "ANPAC's general business practices, pattern and practice of dishonest lowballing claim handling tactics to maximize corporate revenue,"[86] as the Court concludes ANPAC did not handle this case in bad faith.

---

[81] Def.'s Answer (Doc. 3) ¶ 40.

[82] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 28.

[83] *Id.* at 24.

[84] *Allstate Ins. Co. v. Dodson* was a defamation and tortious interference case brought by a physician, not a "bad faith claim handling" case. Part of that case involved an insurance industry expert's testimony that Allstate had a "nationwide practice of deliberately low-balling small insurance claims," and that the national claims practices were related to Allstate's denial of claims performed by the physician. Allstate argued that the testimony was "irrelevant and inflammatory." Though the trial court found that "very little" of the expert's testimony "was relevant to this case," it nevertheless allowed the testimony. On appeal, the Supreme Court of Arkansas concluded that the trial court did not abuse its discretion by permitting the testimony. *Dodson*, 376 S.W.3d at 426-28.

[85] Pl.'s Resp. to Mot. for Summ. J. (Doc. 37) at 24.

[86] *Id.*

### B. "Wrongful Action in the Performance of the Policy"

With regard to the "wrongful action in the performance of the policy" claim, the Arkansas Supreme Court has held that Arkansas "does not recognize an independent tort for negligent performance of an insurance contract."[87] It has further held that "mere refusal to pay a disputed insurance claim" is not actionable in tort even when the "foreseeability requirement for negligent performance has been established."[88]

Ms. Flowers claims that ANPAC "evaluated Plaintiff's claim improperly, which constitutes defective performance under the insurance policy, and gives rise to tort liability for negligent-wrongful action."[89] The Arkansas Supreme Court, however, has clearly held that Arkansas "does not recognize an independent tort for negligent performance of an insurance contract."[90] Ms. Flowers concedes that she "is unaware of an Arkansas appellate case affirming a jury verdict against a first-party insurance carrier for misfeasance, negligence, or defective performance in handling a claim under an insurance policy."[91] This Court will not recognize such

---

[87] *Running M Farms*, 366 Ark. at 490, 237 S.W.3d at 40.

[88] *Id.* at 41-42.

[89] Pl.'s Compl. (Doc. 2) at 34.

[90] *Running M Farms*, 366 Ark. at 490, 237 S.W.3d at 40. The Arkansas Supreme Court went on to explain that, in a prior case, it "specifically stated that it does not agree with the rule that an insurance company exposes itself to an action in tort simply by denying a claim." *Id.* at 41. The Court noted that in that prior case, the Court "added that the '[m]ere refusal to pay insurance cannot constitute wanton or malicious conduct when, as here, an actual controversy exists with respect to liability on the policy.'" *Id.* (citation omitted). And it "emphasized that if this were not the rule, then a claimant could recover punitive or exemplary damages in every action that involved a refusal to pay an insurance policy." *Id.*

[91] Ms. Flowers asked the Court to "certify[] the question to the Arkansas Supreme Court of whether a policyholder has a cognizable claim against an insurance carrier for defective performance, misfeasance, or negligence in performing its obligations owed under an insurance policy." Pl.'s Mot. to Certify Question to the Ark. S. Ct. (Doc. 40). But, as Ms. Flowers concedes, the Eighth Circuit has answered that question, relying on the Arkansas Supreme Court's decision in *Running M Farms*. Ms. Flowers states that the Eighth Circuit "interpreted *Running M Farms* to prohibit a negligence cause of action against first-party carriers based on contractual obligations." Pl.'s Br. in Supp. of Mot. to Certify Question to the Ark. S. Ct. (Doc. 41) at 5 (citing *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc.*, 636 F.3d 445, 451 (8th Cir. 2011)). Ms. Flowers may not like the Eighth Circuit's conclusion as to what Arkansas case law says. But I am bound by it. I also happen to think it's correct.

a cause of action when the Arkansas Supreme Court has not.[92] The Motion for Summary Judgment is granted on the "wrongful action in the performance of the policy" claim.

## IV. CONCLUSION

For the foregoing reasons, ANPAC's Motion for Summary Judgment on the Issues of Bad Faith and "Wrongful Action in the Performance of the Policy" is GRANTED.

IT IS SO ORDERED this 30th day of September 2020.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[92] The U.S. Supreme Court has held that federal courts are not "free to exercise an independent judgment as to what the common law of the state is—or should be." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 71 (1938). It is the state supreme court that "should utter the last word" on such matters. *Id.* at 79. *Running M Farms* is the last word that the Arkansas Supreme Court has uttered regarding insurance carrier tort liability, so that is the decision this Court must apply.